IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Plaintiff,

v.

MENARD INC.,

Defendant.                                              No. 08-0655-DRH

MEMORANDUM and ORDER

HERNDON, Chief Judge:

### I. Introduction and Background

Pending before the Court is Defendant's motion for summary judgment (Docs. 40 & 41). Defendant contends that it is entitled to summary judgment as the evidence demonstrates that Brenda Coe ("Coe") was demoted for legitimate, non-discriminatory reasons and not because she was trying to get pregnant. Plaintiff opposes the motion contending that there are numerous questions of fact as to whether Defendant discriminated against Coe on the basis of her sex by demoting her from her department manager position because she was trying to get pregnant (Doc. 43). Based on the record, the applicable law and the following, the Court denies the motion.

On September 22, 2008, the Equal Employment Opportunity Commission ("EEOC") on behalf of Coe filed suit against Coe's former employer

Menard, Inc. (Doc. 4). The Complaint asserts claims under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 based upon Menard's alleged discrimination on the basis of sex. The Complaint alleges that Menard demoted Coe from her Department Manager position because she was trying to get pregnant. The EEOC seeks injunctive relief, compensatory and punitive damages and costs. On December 3, 2008, Menard filed its Answer (Doc. 16). On June 17, 2009, the Court denied Menard's motion to dismiss, or in the alternative, for stay (Doc. 37).[1]

On September 21, 2009, Menard filed its motion for summary judgment (Docs. 40 & 41).[2] The EEOC filed its response on October 26, 2009 (Doc. 43) and Menard filed its reply on November 2, 2009 (Doc. 44).

## II.  Facts

Menard operates home improvement retail stores throughout the Midwest, including one located in Effingham, Illinois. Throughout Coe's employment with Menard, Rick Huss was the General Manager of the Effingham store. On May 18, 2004, Coe began working for Menard as a Manager Trainee at the Effingham store. On August 24, 2004, Huss promoted Coe to Second Assistant Office Manager. On August 31, 2004, Huss promoted Coe to First Assistant Manager in the Electrical Department. On October 20, 2006, Huss promoted Coe to Department Manager for

---

[1] In its motion to dismiss, Menard argued that the Court should dismiss the case with prejudice because the EEOC failed to engage in good faith conciliation prior to filing suit (Doc. 30).

the Wall Coverings Department.

The record reflects that during her employment, Coe received one written warning and two verbal warnings.[3] On July 27, 2005, Menard issued Coe a written warning because she missed three mandatory meetings between September 2004 and July 2005. On December 11, 2006, Coe received a verbal warning for one unexcused tardy/absence within a three month period. Thereafter, on April 27, 2007, she received another verbal warning for gossiping about another team member.

As to merit raise increases, Menard's Team Member Information Booklet states:

> "Pay increases are not automatic. Team Members are mailed Pay Rate Increase Merit Review Eligibility Notices at their home addresses approximately four weeks prior to the eligibility date of the pay increase. Team Members must present their Notice to their Department Supervisor and Unit Manager, and request an evaluation of their job performance, attendance record, skill level and work attitude. Pay increases will be approved when a Team Member meets expectations of the Department Manager and Unit Manager. Team Members may be asked to take a competency exam to demonstrate an acceptable skill level. Pay increases may be postponed when an acceptable skill level or satisfactory job performance has not been met."

Employees also receive a standard form letter informing them of their eligibility for a merit raise increase. The letter specifically states that merit wage increases are not automatic and that management could postpone merit increases with proper

---

[3]Menard claims that Coe received a verbal warning on July 16, 2007 for having one unexcused tardy/absence in a ninety-day period. Coe denies receiving this warning or seeing the verbal warning. She claims that because of her demotion she was pulled off the schedule for July 15, 2007.

justification and that general managers must approve the increases based on the accompany merit criteria included in the letter.

Throughout her employment, Coe received merit increases regularly without any stipulations or conditions. Menard never denied or postponed one of her merit raise increases. During Coe's merit increase reviews, Huss did not counsel Coe on her job performance. On December 2, 2005, Huss approved a merit increase for Coe. On this merit increase, Huss noted that Coe needed to increase communication and details of retail and facing.

Sometime in late summer/early fall of 2006, Coe decided to undergo the process of in-vitro fertilization ("IVF"). Coe told Menard's in-house Human Resource Coordinator Jessica Mette that she might be going through IVF. Mette told Coe to let her know when she had more details and/or specific dates that she needed to take off from work. Thereafter, Coe told her assistant department manager, Marla Bourland, about her IVF decision.

On May 23, 2007, Coe told Huss that she was going to have a surgical procedure to prepare her for the IVF procedure.[4] Coe provided Huss with this information so that when she requested time off, he would know why. Coe told Huss that the surgery was an outpatient procedure that lasted one day. One week prior

---

[4] Both sides dispute when Huss was told about Coe's decision to undergo IVF. Menard argues that it was before Coe was promoted to Department Manager in the Wall Coverings Department. The EEOC contends that it was after Coe was promoted. The competing statements between Coe and Huss give rise to a credibility dispute which the Court cannot appropriately adjudicate on a motion for summary judgment. **See Hansen v. Foley & Lardner LLP, 552 F.3d 520, 530 (7th Cir. 2008)**.

to the surgery, Coe informed Huss that the surgery was July 6, 2007 and that she would only need to leave work two hours early that day. Coe was scheduled for her regular days off on July 7 and July 8, 2007 and she planned on returning to work on July 9, 2007. On July 5, 2007, Coe again reminded Huss that she would be leaving early the next day for her surgery.

Earlier, on June 25, 2007, John Menard, the owner and President of Menard, faxed a customer complaint that he received via email to Huss. The customer complaint referenced a female employee in the paint department who failed to provide proper service. John Menard noted on the fax/email "You seem to be getting a few paint department complaints. Do you have the right staff there? Please advise." Huss responded to the email/fax stating: "I have been pressuring Brenda (500 mgr.) to pick up her game. She has failed to keep department morale up. She is being replaced and demoted. I have an eager, aggressive replacement."[5] On June 27, 2007, Huss told Coe that he received communications from the general office about the Wall Coverings Department. Huss also told Coe that he had to respond to these communications.

On July 14, 2007, Huss told Coe that she was being demoted because he received a fax from John Menard questioning the leadership in the Wall Coverings Department as a result of a customer complaint that was e-mailed to the corporate

---

[5]Huss testified that he responded to Menard's fax a "couple of days later." Looking at the fax/email there are two fax printed dates: (1) Monday, June 25, 2007 – the date that Menard faxed the email to Huss and (2) Monday, October 1, 2007 – there is no reference or explanation as to why this date is contained on the fax/email.

office. Huss also told her that her demotion was related to the leadership in the department. Huss told Coe that he had to take Menard's fax seriously. She was demoted to the Plumbing Department Assistant Manager. On or about July 6, 2007, Huss promoted Ryan Eblen, the former Assistant Department Manager in the Plumbing Department, to Department Manager in the Wall Coverings Department. Huss selected Eblen to replace Coe without interviewing him.

On July 23, 2007, Huss and Coe again discussed her demotion. Huss told her that he did not feel that the Wall Coverings Department was working well together as a team. Huss also told her that working in the Plumbing Department would make her a better manager.

As a result of her demotion, Coe's pay went from $11.40 per hour to $9.75 per hour. She also lost two annual cost of living raises for the previous two years that she was a manager and two merit raise increases. Coe voluntarily resigned from Menard on September 17, 2007.

### III. **Summary Judgment**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. Proc. 56(c)**. A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. ***Buscaglia v. United States*, 25**

**F.3d 530, 534 (7th Cir. 1994)**. The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. **Fed. R. Civ. Proc. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)**. In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)**.

This standard should be applied "with added rigor" in employment discrimination cases, in which intent and credibility are crucial issues. ***Webb v. Clyde Choate Mental Health and Development Center*, 230 F.3d 991, 997 (7th Cir. 2000); *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *King v. Preferred Technical Group, Inc.*, 166 F.3d 887, 890 (7th Cir. 1999)**. This standard reflects pronouncements that in employment discrimination cases, which often involve issues of motive and intent, summary judgment must be approached with caution. ***Huhn v. Koering Co.*, 718 F.2d 239, 242 (7th Cir. 1983)**. ***Huhn*** relied on an earlier case which recognized that, although summary judgment is improper in employment discrimination cases which involve "weighing of conflicting indications of motive and intent," where a plaintiff has no evidence of discriminatory motive to "put on the scales for weighing," summary judgment *is* appropriate. ***Id.***

### IV.  Analysis

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to "discharge any individual" or "otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment because of such individual's ... sex." **42 U.S.C. § 2000e-2(a)(1)**.  The Pregnancy Discrimination Act ("PDA") amended Title VII to define discrimination "because of sex" or "on the basis of sex" to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." **42 U.S.C. § 2000e(k)**.  The statute further states that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." ***Id.***  The PDA "brought discrimination based on pregnancy within a woman's protections against sex discrimination." ***HuntGolliday v. Metro. Water Reclamation Dist.*, 104 F.3d 1004, 1010 (7th Cir. 1997)**.  The PDA also protects women from discrimination based on their capacity to become pregnant.  ***See UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 206 (1991); *Griffin v. Sisters of Saint Francis, Inc.*, 489 F.3d 838, 844 (7th Cir. 2007).**

Pregnancy discrimination claims are analyzed like any other sex discrimination claim.  ***Hall v. Nalco Co.*, 534 F.3d 644, 647 (7th Cir. 2008)**.  A plaintiff may prove a pregnancy discrimination claim through either the direct

method or the indirect method. *Griffin,* **489 F.3d at 844;** *Troupe v. May Dep't Stores Co.,* **20 F.3d 734, 736 (7th Cir. 1994)**. The direct method of proof involves admissions by the employer, near-admissions by the employer, and more attenuated circumstantial evidence that "suggests discrimination through a longer chain of inferences." *Faas v. Sears, Roebuck & Co.,* **532 F.3d 633, 641 (7th Cir. 2008);** *Hemsworth v. QuoteSmith.com, Inc.,* **476 F.3d 487, 490 (7th Cir. 2007)**. By contrast, the indirect method of proof involves a "certain subset of circumstantial evidence that includes how the employer treats similarly situated employees and conforms to the prescription of *McDonnel Douglas Corp. v. Green*." *Faas,* **532 F.3d at 641**.[6]

The United States Court of Appeals for the Seventh Circuit has been critical of this nomenclature, because the phrase "direct method" erroneously implies that an employee must proceed with direct evidence. *See Faas,* **532 F.3d at 641;** *Luks v. Baxter Healthcare Corp.,* **467 F.3d 1049, 1052 (7th Cir. 2006)(the distinction between the two avenues of proof is "vague," and the terms "direct" and "indirect" are themselves somewhat misleading ....")**.

The Seventh Circuit has explained:

> "Direct" proof of discrimination is not limited to near-admissions by the employer that its decision were based on a proscribed criterion (e.g., "You're too old to work here"), but also *includes circumstantial*

---

[6] "The rubric of the indirect method was first set forth in McDonnell Douglas Corp. v. Green.... Under this methodology, [the plaintiff] may create a presumption of discrimination by establishing a prima facie case of discrimination." *Atanus v. Perry,* **520 F.3d 662, 672 (7th Cir. 2008)(citing *Bahl v. Royal Indemnity Co.,* 115 F.3d 1283, 1290 (7th Cir. 1997))**.

*evidence* which suggests discrimination through a longer chain of inferences."... The focus of the direct method of proof thus is not whether the evidence offered is "direct" or "circumstantial" but rather whether the evidence "points directly" to a discriminatory reason for the employer's action.

**Atanus, 502 F.3d at 671-72(citations omitted)**.

Under the direct method of proof, circumstantial evidence demonstrating intentional discrimination includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class, and the employer's reason is a pretext for discrimination." *Id*. Because the EEOC has presented no direct evidence of discrimination, the Court turns to the indirect, burden shifting method.

Under **McDonnell Douglas**, a plaintiff must first make out a prima facie case of discrimination, which requires a Plaintiff to prove: "(1) that she is a member of a protected class; (2) she was meeting her employer's legitimate expectations at the time of the alleged adverse action; (3) she was subjected to an adverse employment action; and (4) the employer treated similarly situated employees not in the protected class more favorably." **Anders v. Waste Mgmt. of Wisconsin, 436 F.3d 670, 676 (7th Cir. 2006)(quoting Scaife v. Cook County, 446 F.3d 735,**

739 (7th Cir. 2006))**. The Seventh Circuit repeatedly has stressed that a Title VII plaintiff must establish each of these elements. **Grayson v. O'Neill, 308 F.3d 808, 818 (7th Cir. 2002); Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 978 (7th Cir. 2004); Atanus, 520 F.3d at 673**.

Once the plaintiff has met her burden of establishing a prima facie case, "A presumption of discrimination arises, and the employer must articulate a legitimate and non-discriminatory reason for the employment action" in question. **Moser v. Indiana Dep't of Corr., 406 F.3d 895, 900 (7th Cir. 2000)**. At this stage, the employer is not required to "prove that it was actually motivated by the proffered reason. Rather an employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." **Rudin v. Lincoln Land Community College, 420 F.3d 712, 724-25 (7th Cir. 2005)(citing Stockett v. Muncie Indiana Transit Sys., 221 F.3d 997, 1001 (7th Cir. 2000))**. And if this is accomplished, the burden shifts back to the plaintiff to show that the employee's reasons are pretextual. **Jackson v. City of Chicago, 552 F.3d 619, 622 (7th Cir. 2009)**.

Defendant maintains that the evidence demonstrates that Coe was demoted because of serious deficiencies in her performance as Department Manager in the Wall Coverings Department. Defendant argues that in the six months leading up to her termination, Coe was disciplined for gossiping about a team member and

for missing department meetings. Defendant further argues that co-workers complained about Coe because she was lazy and failed to lead her department. The EEOC opposes the motion asserting that factual questions exist as to whether Coe was performing satisfactorily; whether there are similarly situated employees who were treated more favorably and whether Menard's reasons for demoting Coe are pretextual. The EEOC contends that it can satisfy the prima facie case: Coe was receiving fertility treatments to assist her to become pregnant, of which she made Menard fully aware; that she was performing her duties satisfactorily as evidence by her merit pay increase ten days prior to her demotion and the lack of documented evidence of deficiencies; and that Menard subjected her to a materially adverse employment decision by demoting her and replacing her with Eblen.

First, Menard argues that the EEOC cannot demonstrate that Coe was meeting Menard's legitimate job expectations at the time of her demotion. Menard contends that one month before Coe was demoted team member, Jason Gouchenouer, told Huss that morale in the Wall Coverings was low and that Coe was not pulling her weight and he also complained a number of times about Coe's poor work performance; that Bourland complained at least five times about Coe to Huss; and that Michael Russo and Ron Gilliland, Assistant Store Managers, complained repeatedly to Huss about Coe's poor work performance. Huss testified that he personally observed her deficient performance. Furthermore, Defendant argues that the fax from John Menard reveals that Coe was not meeting Menard's legitimate job expectations. The EEOC counters that whether Coe was performing to Menard's

expectations is a disputed issue of fact. The Court agrees. None of Menard's managerial staff documented any of the complaints even though they were required to do so under Menard's own procedures. Operations Human Resources Advisor Karen Ehr investigated Coe's claim and noted that Huss did not follow the correct procedure for discipline and counseling in Coe's case. Further, these issues/complaints were not noted or marked on any of her merit pay increase reviews even though the pre-printed forms had an area to do so. The EEOC claims that Coe was never informed of any of these issues by either Huss, Russo or Gilliland. Furthermore, Coe received a merit pay increase ten days before her demotion.[7] What the Court gleans from the record is that Coe's demotion was based on disputed facts, intent and credibility, leaving what is "essentially a swearing contest." **Wohl v. Spectrum Mfg., Inc., 94 F.3d 353, 358 (7th Cir. 1996).** Thus, the Court finds that the EEOC presented sufficient evidence to create a genuine issue of material fact as to whether Coe was satisfying Menard's legitimate expectations at the time of her demotion.

Next, Menard argues that the EEOC cannot point to a similarly situated employee. Specifically, Menard argues that Eblen was not similarly situated because he was not a Department Manager, did not regularly deal with the same supervisor, was not demoted and was not the subject of repeated complaints from co-workers,

---

[7]As stated earlier, Menard's Team Member Information Booklet says that merit pay increases are not automatic. However, the employees of Menard at the Effingham store say that the merit pay increases are automatic.

managers and the President of the company. The EEOC responds that whether there is a similarly situated employee is a disputed issue of fact. Specifically, the EEOC responds that because her job performance is disputed then Coe's comparable does not necessarily need to have the same alleged performance record. Rather, the EEOC contends that Eblen, her successor, is a sufficient comparable.

To assess whether two employees are similarly situated, "a court must look at all relevant factors, the number of which depends on the context of the case." **Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000)**. "[I]n disciplinary cases-in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason-a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." **Id. (internal citations omitted)**. Typically this involves showing that the employees shared the same supervisor, performance standards, and "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." **Id. at 617-18**. "The similarly situated inquiry is a flexible, common-sense one that asks, at bottom, whether 'there are enough common factors ... to allow for a meaningful comparison in order to divine whether intentional discrimination was at play.' " **Henry v. Jones, 507 F.3d 558, 564 (7th Cir. 2008) (quoting Barricks v. Eli Lilly and Co., 481 F.3d 556, 560 (7th Cir. 2007))**. Nevertheless, substantial similarity is all that is required, rather than complete identity. **Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 831 (7th Cir. 2007) (citing Humphries v. CBOCS**

***West, Inc.*, 474 F.3d 387, 405 (7th Cir.), cert. granted, 128 S.Ct. 30, 168 L.Ed.2d 807 (2007))**.

Here, the Court finds that there are sufficient commonalities between Coe and Eblen for a jury to conclude that they are similarly situated. At the relevant time, Coe was a department manager and Eblen was an assistant department manager. Both Coe and Eblen reported to Huss. Huss testified that "Department managers, assistant department managers, part-timers, full-timers" all reported directly to him and that he was ultimately responsible for all of them. (Huss deposition; Doc. 40-5, p. 13). Huss also testified that department managers and assistant managers had the same authority and when the department manager was off duty, the assistant manager operated as manager. (Huss deposition; Doc. 43-4, p. 67). In addition, Huss and Russo testified that Eblen had the requisite experience and was qualified for the department manager position. Further, Eblen routinely received the merit pay increases and received two verbal warnings. On January 22, 2007, Eblen received a verbal warning for two unexcused tardies/absences within a three month period and another on May 6, 2007 for one unexcused tardy/absence within a three month period. These are similar to the verbal warnings that Coe received. Likewise, as the Court finds that there is a genuine issue of material fact as to whether Coe met Menard's expectations, the Court cannot say that there is no genuine issue of fact concerning whether Eblen was similarly situated to Coe.

Lastly, Menard argues that the EEOC cannot show that Menard's proffered reason for demoting Coe - her poor work performance - was pretextual.

As previously discussed, however, the EEOC has shown that there is a genuine factual dispute with respect to Coe's performance record and, therefore, with respect to whether that was the actual reason or Menard's actions. Furthermore, the timing of Coe's demotion and Eblen's notification is suspect. Menard notified Eblen that he was promoted on July 6, 2007, the same day the Coe had her surgery. Moreover, Coe received a merit increase on July 4, 2007, which was ten days before it notified Coe that she was demoted. As a result, Menard is not entitled to summary judgment.

## V. Conclusion

Accordingly, the Court **DENIES** Defendant's motion for summary judgment (Doc. 40). The Court **SETS** this matter for Final Pretrial Conference on March 25, 2010 at 1:30 p.m. Further, the parties should contact Magistrate Judge Proud's chambers if a settlement conference would be beneficial.

**IT IS SO ORDERED.**

Signed this 22nd day of January, 2010.

/s/ David R. Herndon

**Chief Judge
United States District Court**